# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

NICOLAS MARTINEZ,

    Plaintiff,

v.

ATLANTIC FREIGHT SYSTEMS, INC.,

    Defendant.

Civil Action No.: 15-cv-08879 (PGS)

MEMORANDUM
AND ORDER

    This matter comes before the Court on a motion for summary judgment on the state law claims --- New Jersey Law against Discrimination (NJLAD) (Count III), New Jersey Wage and Hour Law (NJWHL) (Count IV) and unlawful retaliatory discharge (*Pierce* Claim) (Count V). (ECF 16). The Court has diversity jurisdiction as Plaintiff resides in Pennsylvania and Defendant is incorporated in New Jersey.

## Statement of Undisputed Facts

    Since February, 1995 Plaintiff has been employed as a tractor trailer driver with defendant Atlantic Freight Systems (AFS) (Plaintiff's Response to Defendant's Statement of Material Facts Not In Dispute ("PRDSMF") at ¶ 2; D.I. 24).

    On September 25, 2014, Plaintiff filed a claim with the Wage Collection Section of the New Jersey Department of Labor and Workforce Development (DOL), claiming that AFS had underpaid his wages. (*Id.* at ¶ 6)[1].

---

[1]    This claim was dismissed by DOL. (Id. at ¶ 7).

On November 18, 2014, Plaintiff drove a tractor trailer to Macungie, Pennsylvania, to pick up and haul pipe to Brooklyn, New York. While he was en-route to Brooklyn, the tractor's engine ceased up because it was low on anti-freeze. While in the process of refilling coolant, Plaintiff burned his hand. (*Id.* at ¶ 13).

Martinez called the dispatcher, Steven Haydu, to report the incident. Then, Martinez returned to Bethlehem, Pennsylvania, and visited the local hospital for treatment. (*Id.* at ¶ 14). On the same day, the hospital discharged Plaintiff and the hospital staff provided him with an "Activity Restrictions" note. This note indicated "limit use of your hand. Do not work for three days." (*Id.* at ¶ 16).

Based on the wage claim filed by Martinez with DOL, on November 19, 2014, DOL Wage and Hour section investigator Arthur Cipriano ("Cipriano") noticed AFS that he would be performing a random audit of AFS's books. (*Id.* at ¶ 21).

On November 21, 2014, Plaintiff drove to AFS' facility to collect his paycheck, and submitted to Guadagnino (a supervisor) a copy of the Activity Restrictions note from the hospital and the paperwork related to his worker's compensation claim (*Id.* at ¶ 23).

On November 24, 2014, Plaintiff's hand was treated at an outpatient burn center in Allentown, Pennsylvania. The staff provided Plaintiff with another note to exclude him from work until medically cleared to return. (*Id.* at ¶ 24).

On December 2, 2014, Guadagnino called Plaintiff about resuming work; and Plaintiff said, "I can go back tomorrow." Plaintiff testified at deposition that he was fully recovered, and his burned hand had healed, and that he was ready to return to work. (*Id.* at ¶ 25). On December 4, 2014, Plaintiff obtained a letter from the outpatient burn center, stating that he was cleared to return to regular work duties with no restrictions. (*Id.* at ¶ 26).

On December 5, 2014, Plaintiff called the dispatcher for a work assignment on December 8, 2014. Plaintiff testified that during this call he was transferred to Curtis Powell (President of AFS) who asked Plaintiff "what is all this money that I owe you?" Plaintiff replied that the money owed was the money AFS did not pay him for all the hours worked. At that moment, Powell fired Martinez saying "you not working for me anymore." (*Id.* at ¶ 27). After the December 5, 2014 telephone conversation with Powell, Plaintiff never returned to work at AFS. (*Id.* at ¶ 28).

Plaintiff stated at his deposition that Powell terminated his employment due to his filing of the wage claim with DOL. However, in the motion papers, Plaintiff argues that the firing was related to either the wage claim, his disability, or both. (*Id.* at ¶ 28). AFS and Powell deny that the December 5, 2014 telephone conversation ever occurred. Powell allegedly thought that Plaintiff had retired or had simply quit. Powell testified that he assumed that Plaintiff had quit because Martinez had "cleaned out" the truck that he normally drove by removing all of his personal items[2]. Evidently, during the prior summer, Guadagnino and Powell spoke with Plaintiff about retiring in November, 2014. Plaintiff denies that such a conversation ever occurred.

The DOL auditor was deposed, and he testified that it is his duty to protect the identity of the person who contacted his office so that there no retaliation will occur against the complainant. The auditor claims that he never identified Martinez to Powell or to anyone at AFS.

---

[2] There is conflicting testimony of Diane McMorrow, AFT bookkeeper. At her deposition, she acknowledged that she had heard Powell state that the DOL audit was due to Martinez, but at another point in her testimony, she denied that she had heard same.

## LEGAL STANDARD

*Fed. R. Civ. P. 56(c)*

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to Aset forth specific facts showing that there is a genuine issue for trial").

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, after drawing all inferences in favor of the non-moving party, and making all credibility determinations in his favor "that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina,* 226 Fed. App'x. 222, 227 (3d Cir. 2007).

**New Jersey Law against Discrimination (NJLAD) (Count III)**

Generally, Courts analyze disparate treatment claims under the NJLAD by using the three-part burden shifting analysis of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Victor v. State of New Jersey*, 203 N.J. 383, 408-409 (2010). In this case, Plaintiff must prove that a causal link exists between a protected action and the employer's adverse action.

Defendant argues that there is no causal connection between the alleged firing of Martinez and his burned hand. However, according to Plaintiff, the firing occurred during a telephone call between Powell and Martinez at which time Powell had voiced his displeasure with Martinez by stating "what is this money I owe you?" and then allegedly fired Martinez. That statement is vague and it could be referring to the DOL audit, or his absence from work due to his disability (burned hand).

With regard to the disability discrimination claim, it is Plaintiff's burden is to prove a causal connection. Temporal proximity "is an evidentiary basis from which an inference can be drawn" to demonstrate a causal connection. *Kachmar v. Sungard Data Systems*, 109 F. 3d 173, 178 (3d Cir. 1997). Temporal proximity is circumstantial evidence that is sufficient to raise an inference that a protected activity (burned hand) was the likely reason for the adverse action. *Id*. at 177. Proof of casual connection "involved a highly specific inquiry into the motives of an employer and may be established in a number of ways." *Jackson v. Trump Entertainment Resorts*, 149 F. Supp.

5

3d 502, 509 (DNJ 2015). Here, the firing occurred on Martinez's last day of disability which shows temporal proximity to the disability, and if the jury believes the DOL auditor's statement that he never advised anyone at AFS about Martinez filing the complaint, then a jury could infer the causal connection to the disability.

**New Jersey Wage and Hour Law (NJWHL) (Count IV)**

Alternatively, Plaintiff's complaint also alleges that AFS fired Martinez because he filed a claim with the Wage Collection Section of the DOL wherein he claimed that AFS had underpaid his wages. Under the New Jersey Wage and Hour Law, an employee has a private cause of action for an alleged violation of the law. (N.J.S.A. 34:11-56a4, et seq). The New Jersey Supreme Court has declared that the New Jersey Wage and Hour Law should be "construed liberally to effectuate its purpose. " *Hargrove v. Sleepy's, LLC,* 106 A.3d 449, 458 (2015) (internal quotations and citations omitted). To bring a retaliation claim under the New Jersey Wage and Hour law, Plaintiff must be an employee of Defendant. See, e.g., *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293 (3d Cir.1991).

However, Defendant argues that no one at AFS knew, or had knowledge that Plaintiff had filed a wage claim (Def.'s Br. at 8; D.I. 16-1). However, Plaintiff's alleged conversation with Powell on December 5, 2014 may circumstantially show otherwise. For example, although the DOL auditor denies disclosure of Martinez's identity, Powell's bookkeeper stated she recalls Powell talking about Martinez and the audit; but then she denied that statement. The jury must decide which of the statements is true. Therefore, whether Defendant knew that Plaintiff had filed a wage claim is a fact question, It is best to hear evidence at trial and let the jury decide.

As noted above, Plaintiff argues that he has an implied private cause of action under the New Jersey Wage and Hours Law because he was fired by Powell because he complained to the

DOL about his wages. *Chen v. Domino's Pizza*, 2009 WL 3379946 at *3 (DNJ 2007). The NJWHL provides an unusual remedy for retaliation. The statement mandates that retaliation is a disorderly persons offense, and if such a proceeding is instituted, then a judge may award reinstatement of employment and any wages lost (*N.J.S.A*. 34:11-56a4, et seq). Since the statute is liberally construed to effectuate its remedial purpose, the New Jersey Courts have implied private right of action to allow the aggrieved party to institute a lawsuit for compensatory relief. *Hargrove v. Sleepy's,* 106 A. 3d 449, 458 (DNJ 2015); see, *Kronick v. Bebe Stores, Inc.*, 2008 WL 4509610 at *6-7 (DNJ 2008). Both parties seemingly agree that there is an implied private right of action; however Defendant argues that the facts do not support such a claim. Defendant contends that the phone call between Powell and Martinez never occurred; and the DOL auditor maintains that he never identified Martinez to Powell. Hence, this cause of action did not occur.

The above facts are in dispute. Martinez testified that he believed the DOL complaint was at issue when he spoke with Powell on the telephone on December 5, 2014. Moreover, there is some conflicting testimony of Powell's bookkeeper (Diane McMorrow) who overheard Powell stating that Martinez reported a claim with the DOL. As such, those facts give rise to a jury question.

Based on my review of the motion, the jury must decide whether Powell's firing of Martinez was due to a claim under the NJLAD, a claim under the NJWHL, or both. Obviously whether the call between Martinez and Powell ever occurred is a fact question. And, if it occurred, the statement by Powell ("what is all this money I owe you?") is a fact question to determine Powell's motivation.

**Unlawful Retaliatory Discharge (Count V)**

Plaintiff does not opposed the motion for summary judgment on the unlawful retaliatory Pierce claim. As such, summary judgment is granted on Count V of the complaint.

ORDER

This matter having come before the Court on a motion for summary judgment on the state law claims --- New Jersey Law against Discrimination (NJLAD) (Count III), New Jersey Wage and Hour Law (NJWHL) (Count IV) and unlawful retaliatory discharge (Pierce Claim) (Count V). (ECF 16); for the reasons set forth above;

IT IS on this 27th day of June, 2017;

ORDERED that summary judgment on Count III of the Complaint is denied; and it is further

ORDERED that summary judgment on Count IV of the Complaint is denied; and it is further

ORDERED that summary judgment on Count V of the Complaint is granted.

*s/Peter G. Sheridan*
PETER G. SHERIDAN